**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CLINTON SPARKS,   )<br>)<br>Plaintiff,   )<br>vs.   )<br>)<br>HRHH HOTEL, LLC; HRHH   )<br>HOTEL/CASINO, LLC,   )<br>)<br>Defendants.   )<br>_____ ) | Case No.: 2:11-cv-00973-GMN-VCF<br><br>**ORDER** |

This is a contract case between Plaintiff Clinton Sparks and Defendants HRHH Hotel, LLC and HRHH Hotel/Casino, LLC (collectively, "HRHH"). Pending before the Court is the Motion for Partial Summary Judgment (ECF No. 13) filed by Defendants. Plaintiff filed a Response and Errata (ECF Nos. 18, 19), and Defendants filed a Reply (ECF No. 21).

**I.    BACKGROUND**

Plaintiff entered into a one-year term contract with Defendants to perform as the resident DJ for Vanity Nightclub at the HRH Tower, which is part of the Hard Rock Hotel and Casino. The Performance Contract ("the Contract") for "Clinton Sparks Residency at Hard Rock Nightlife Venue" was executed on November 24, 2008, between HRHH Hotel LLC and Daouda Leonard, Clinton Sparks' Manager. (Performance Contract, Ex. A to Defs.' Answer and Countercl., ECF No. 11; Exhibit 1 to Defs.' Mot. for Partial Summ. J., ECF No. 13; Sub-Exhibit A to Errata to Pl.'s Response, ECF No. 19.) In the Contract, the Dates of Engagement are described as "Each Saturday beginning January 2, 2010, ending December 18, 2010. (1 year contract term)." Compensation is listed as "$11,500.00 [USD] per engagement," "due on each engagement date" as described under "Payment Schedule."

Under "CONTRACT TERMS" the Contract provides:

4) HRH CANCELLATION:
   a) HRH reserves the right to cancel individual engagement dates. HRH agrees to provide the Manager notice, in writing (including e-mail), of any such cancellations a minimum of three (3) weeks in advance of the individual engagement date.
   b) In the event of any such cancellation, there will not be any compensation.

\* \* \*

6) EXCLUSIVITY:
   a) Talent agrees not to perform at any other venues or events within 60 miles of Clark County, NV, for the duration of the contract without prior written approval from HRH.
   b) In the event that the contract is terminated, Talent agrees not to perform at any other venues within 60 miles of the greater Las Vegas area for 60 days following the date of termination, without express written permission from HRH.

Plaintiff began the residency and performed at Vanity Nightclub's grand opening party on January 2, 2010. On April 20, 2010, HRHH told Plaintiff that it was canceling all remaining engagements and ending Plaintiff's residency effective April 17, 2010.

Based on these events, Plaintiff filed the instant lawsuit. Plaintiff's Amended Complaint (ECF No. 5) against HRHH Hotel, LLC, and HRHH Hotel/Casino, LLC, asserts two claims for relief: Breach of Written Contract and Breach of Implied Covenant of Good Faith and Fair Dealing.

Along with their Answer, Defendants filed a Counterclaim for Declaratory Judgment. (ECF No. 11.) In the Counterclaim, Defendants request that the Court declare "that the Performance Contract gave it the right to terminate the parties' agreement by cancelling Plaintiff's remaining engagements with three weeks [sic] notice." (*Id*. at 7:5-7.) Now, with the instant motion, Defendants request summary judgment on their counterclaim.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

/ / /

## III. DISCUSSION

In diversity actions, federal courts apply substantive state law. *Erie R. Co. V. Tompkins*, 304 U.S. 64, 78 (1938). Under Nevada law, actions for declaratory judgment may be maintained pursuant to Nevada Revised Statutes 30.040, which provides:

> Any person interested under a deed, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder.

In Nevada, "[a] court has the obligation to enforce an unambiguous agreement as written, absent conflict with statute, offense to public policy, ambiguity, fraud, unconscionability, or other recognized basis for avoidance." *Easton Bus. Opportunities v. Town Executive Suites*, 230 P.3d 827, 835 (Nev. 2010). Courts "effectuate the intent of the parties, which may be determined in light of the surrounding circumstances if not clear from the contract itself." *Davis v. Nevada Nat. Bank*, 737 P.2d 503, 505 (Nev. 1987). "The parties' intentions regarding a contractual provision present a question of fact." *Anvui, LLC v. G.L. Dragon, LLC*, 163 P.3d 405, 407 (Nev. 2007). "If there is an ambiguity requiring extrinsic evidence to discern the parties' intent, summary judgment is improper." *Dickenson v. State, Dept. of Wildlife*, 877 P.2d 1059, 1061 (Nev. 1994) (per curiam) (citing *Mullis v. Nevada Nat. Bank*, 654 P.2d 533, 535 (Nev. 1982)). Therefore, summary judgment is not appropriate if the Court finds that the contract is ambiguous as to the parties' intent.[1]

---

[1] Plaintiff argues correctly that "ambiguities are to be construed against the party . . . who drafted the agreement or selected the language used." *Davis*, 737 P.2d at 505. Also, "[a]n interpretation which results in a fair and reasonable contract is preferable to one that results in a harsh and unreasonable contract. *Dickenson*, 877 P.2d at 937 (citing *Sterling v. Goodman*, 719 P.2d 1262, 1263 (Nev. 1986)). However, this "rule that contracts should be construed against the drafter – *contra proferentem* – applies only 'as a rule of last resort when the contract is ambiguous or unconscionable.'" *Easton*, 230 P.3d at 835 n.5 (quoting *Thompson v. Amoco Oil Co.*, 903 F.2d 1118, 1121 n.3 (7th Cir. 1990)). Furthermore, since a motion for summary judgment may be denied where ambiguity is found, this rule is not applied here.

In the Counterclaim, Defendants request an order dismissing Plaintiff's Amended Complaint with prejudice and a declaratory judgment "that the terms of Performance Contract gave HRHH the right to terminate the Performance Contract by cancelling Counter-Defendant Sparks' remaining engagements on three weeks [sic] written notice, and that Counter-Defendant Sparks was prohibited from performing at other venues within 60 miles of the greater Las Vegas area for 60 days following that termination." (Defs.' Answer and Countercl., 7:10-15.)

Defendants allege that "[a]fter several weeks and numerous customer complaints about his performances, it became apparent that Sparks was not a good fit at Vanity." (*Id*. at 6:10-11.) Defendants rely upon the HRH Cancellation clause, "Section 4(a) of the Performance Contract gives HRHH the right to cancel engagement dates upon three weeks [sic] written notice to Sparks' manager," and that "[t]he contract does not limit on the number of engagement dates that HRHH may cancel." (*Id*. at 6:12-15.) Defendants also point to Section 6(b) of the Exclusivity clause which states that "[t]he Performance Contract provides for termination prior to its natural expiration." (*Id*. at 6:16-20.)

The relevant clauses are as follows:

**Section 4. HRH CANCELLATION:**

a) HRH reserves the right to cancel individual engagement dates. HRH agrees to provide the Manager notice, in writing (including e-mail), of any such cancellations a minimum of three (3) weeks in advance of the individual engagement date.
b) In the event of any such cancellation, there will not be any compensation.

**Section 6. EXCLUSIVITY:**

b) In the event that the contract is terminated, Talent agrees not to perform at any other venues within 60 miles of the greater Las Vegas area for 60 days following the date of termination, without express written permission from HRH.

/ / /

As a threshold matter, the Court must determine whether the Contract is clear on its face, or if it is ambiguous. If the intent of the parties can be determined from the plain language of the text, there is no ambiguity. However, if the language of the contract is susceptible to more than one reasonable meaning or interpretation, it is ambiguous. The question before the Court is whether Defendants had the right, pursuant to the Contract terms, to terminate the parties' agreement by cancelling all of the Plaintiff's remaining engagements with three weeks' notice.

Here, the Court finds that the phrase "[i]n the event that the contract is terminated" in Section 6. Exclusivity clause, clearly indicates that the parties contemplated a possible termination of the entire contract, and not solely "individual engagement dates" as described in the cancellation clause.

However, the Court also finds that the presence of the word "individual" is significant as a modifier to the engagement dates Defendants reserved the right to cancel in the cancellation clause. If the cancellation clause was intended to reserve Defendants' rights to cancel *all remaining* engagement dates left in the one-year contract term, the inclusion of the word "individual" would be superfluous in the context of a *cancellation* clause, as opposed to a termination clause, for example. As Defendants recognize in the motion, courts should not interpret a contract so as to render its provisions meaningless, and should give effect to every word in the contract. *Musser v. Bank of America*, 964 P.2d 51, 54 (Nev. 1998) (per curiam); *Caldwell v. Consol. Realty and Mgmt. Co.*, 668 P.2d 284, 287 (Nev. 1983).

Defendants correctly point out that nothing in the contract limits the number of shows that Defendants could cancel. However, even though the cancellation clause refers to "dates" and "cancellations" in the plural, the Court does not find that this cancellation provision unambiguously provides for termination of the entire Contract, which is described as having a "1 year contract term."

Plaintiff's interpretation is that the language of the Contract does not state that

Defendants had the right to cancel the entire agreement.  The Court finds that this construction has merit, and is a reasonable interpretation of the plain language of the Contract.  Accordingly, the Court finds that the terms of the Contract are ambiguous as to the means by which the parties may terminate the Contract, and that summary judgment must be denied.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion for Partial Summary Judgment (ECF No. 13) is **DENIED**.

**DATED** this 31st day of May, 2012.

_____
Gloria M. Navarro
United States District Judge